**Omnipoint v. Nashua**             **CV-07-46-PB    02/06/08**
                    **UNITED STATES DISTRICT COURT**
                  **FOR THE DISTRICT OF NEW HAMPSHIRE**


**Omnipoint Communications, Inc.**

    **v.**                               Civil No. 07-cv-46-PB
                                        Opinion No. 2008 DNH 032
**City of Nashua, et al.**


                    <u>**AMENDED MEMORANDUM AND ORDER**</u>

    Omnipoint Communications, Inc. ("Omnipoint") alleges in this
action that the Nashua Zoning Board of Adjustment ("ZBA")
improperly denied Omnipoint's application for a special exception
to construct a wireless telecommunications tower on property
located within a 220-home residential development known as Coburn
Woods.  Omnipoint's complaint consists of three counts.  Count I
is a conventional appeal from a decision of the ZBA brought
pursuant to N.H. Rev. Stat. Ann. § 677:4.  Omnipoint claims in
Count II that the ZBA's decision violates the Telecommunications
Act of 1996 because the decision is not supported by substantial
evidence.  <u>See</u> 47 U.S.C. § 332(c)(7)(B)(iii).  It argues in Count
III that the decision violates the Telecommunications Act because
it effectively prohibits the provision of personal wireless

services to the area that would be served by the proposed tower. See 47 U.S.C. § 332(c)(7)(B)(i)(II).  The parties have submitted cross motions for summary judgment with respect to Counts I and II.  For the reasons that follow, I grant the ZBA's motion for summary judgment and deny Omnipoint's cross motion for summary judgment.

## I.   BACKGROUND[1]

### A.   Nashua Zoning Requirements

Telecommunications towers are permitted in the City of Nashua by special exception.  See Use Matrix (Nashua Land Use Code § 16-26, Table 26-1), reproduced in part at CR 10.  In granting a special exception, the ZBA must find that an applicant has satisfied five general conditions:

> 1) the requested use is permitted as a special
> exception in the Land Use Code;
> 2) the requested use will not create undue traffic
> congestion or unduly impair pedestrian safety;
> 3) the requested use will not overload any municipal
> system such as public water, drainage, or sewer systems
> to such an extent that the city will be unduly
> subjected to health, safety, or general welfare
> hazards;

_____

[1] Citations are to the Certified Record "CR" submitted by the City of Nashua.

> 4) any special regulations for the use are fulfilled; and
> 5) the requested use will not "impair the integrity or be out of character with the district or immediate neighborhood where it is located, nor be detrimental to the health, morals, or welfare of the residents of the city."

Land Use Code § 16-433(f).

Telecommunications towers are also subject to special regulations that include specific requirements regarding where towers may be situated and how they must be designed. <u>See</u> Nashua Land Use Code § 16-69, reproduced at CR 10. If all of the above criteria are satisfied, the ZBA must grant a request for a special exception. Nashua Land Use Code § 16-433(f). The Land Use Code also states that the ZBA must provide a written statement of reasons for any decision approving or denying an application for a special exception. <u>Id.</u>

**B.   <u>Omnipoint's Application</u>**

Omnipoint, a wholly-owned subsidiary of T-Mobile, is licensed to provide wireless telecommunications services in and around the City of Nashua. In August 2006, Omnipoint applied for a special exception to construct a wireless communications tower at 311 Coburn Avenue. CR 1. As originally proposed, the tower was to be 150 feet high with external antennae, set in a 70 foot

-3-

by 70 foot chain-link fenced area on a 220-lot residential development known as Coburn Woods.

**C.   Coburn Woods**

Coburn Woods is a cluster-style development in which the clustered placement of 220 single-family homes is offset by open spaces designated as "common property."  The common property includes large wooded areas, tennis courts, ponds, and pools cared for by the homeowner's association and available for use by all of the development's residents.  See CR 13-B.  Many of the homes in Coburn Woods enjoy views of the wooded common areas. See, e.g., CR 21 at 30-34.

The developers of Coburn Woods intended to create a unique community where placement of the houses would minimize changes to the natural state of the original property.  See CR 12 at 5. Because cluster-style developments were not yet permitted under the Nashua Land Use Code when Coburn Woods was developed in 1972, the developers obtained a variance to create the development. See CR 12.  The ZBA granted this variance with the stipulation that the plans, which included preservation of the common areas in their natural state, would be strictly followed.  See CR 12.

The fee owner of the Coburn Woods property leased it to a homeowners' association for 99 years, beginning on or about 1972. At some point prior to August 14, 2006, the Association's Board of Directors entered into a sublease agreement with Omnipoint, granting Omnipoint a leasehold interest in an area within the development's wooded common property.

**D.   ZBA Hearings**

The ZBA met on September 26, 2006, to consider Omnipoint's application.  CR 21.  At the meeting, Omnipoint amended its application to reduce the tower's proposed height to 112 feet so that it would not need to be lighted under Federal Aviation Administration regulations.  Omnipoint's attorney answered questions from board members regarding the location, construction, and maintenance of the tower.  Seventeen abutters and neighborhood property owners and two attorneys representing abutters testified in opposition to Omnipoint's application. Abutters discussed concerns about the visual impact of the tower on the neighborhood, possible health effects from the tower's radio frequency emissions, concerns that the tower would collapse, and concerns about the noise level of the tower's

operating machinery.  <u>See</u> CR 21.   The ZBA tabled the application in order to review the information submitted by various parties.

The ZBA met again on November 21, 2006 to consider Omnipoint's application.  Omnipoint's attorney reported that, in response to concerns from neighborhood property owners, Omnipoint had agreed to modify its proposal by reducing the tower's proposed height from 112' to 105', moving the tower's proposed location farther into the woods and away from the residences, and modifying the tower's structure from a monopole with external arrays to a "slick stick" model, where all of the antennae would be inside the tower.

Eight neighborhood property owners and one attorney representing abutters testified in opposition at the November 2006 ZBA meeting, again raising concerns about the tower's impact on the residential character of the neighborhood, the original intent of the developers to keep the common property as open space, and safety concerns.  Omnipoint's attorney and an engineer representing T-Mobile responded to the residents' concerns and answered questions.

In addition to the testimony offered at the two ZBA meetings, Omnipoint also submitted an affidavit from a radio

frequency expert (CR 4), a map illustrating the wireless coverage gap (CR 5), the results of balloon tests held on August 9, 2006 and October 7, 2006 (CR 7, 26), an affidavit from a professional engineer regarding the tower's structural design (CR 24), and five appraisal reports regarding the impact of wireless telecommunications facilities on property values in a variety of New Hampshire communities (CR 27).  Omnipoint also submitted original site and erosion control plans (CR 3, 8) and revised site plans (CR 23, 25).

Objectors submitted additional information, including the opinion of a real estate broker on property values (CR 11), background information on the Coburn Woods development (CR 13 A–C), information regarding cell phone tower collapses in other communities (CR 13 F–H, 28), information about an alternative distributed antenna system (CR 13 J–L), an appraisal of property values in North Hampton, New Hampshire, related to a proposed wireless telecommunications installation in that community (CR 13 M), an operation sound level study from a Hudson, New Hampshire, cell phone tower (CR 13 N), letters from attorneys representing abutters (CR 12, 13, 30), and letters, e-mails, and petitions in opposition to Omnipoint's application (CR 16–19).

The ZBA voted unanimously to deny Omnipoint's application for a special exception on December 12, 2006.  CR 36.  It then provided a written explanation for its decision in a December 14, 2006 letter.  CR 37.  The letter outlined the five required conditions for a special exception and addressed each in turn. Although the ZBA agreed with Omnipoint that it had satisfied four of the five requirements for a special exception, it denied Omnipoint's application because Omnipoint could not demonstrate that the proposed tower would not damage the character of the surrounding neighborhood.  The ZBA offered three reasons for its decision.

First, the ZBA noted that the city had accepted the original 1972 plan for the Coburn Woods development with the stipulation that the plan would be strictly followed, and one component of the plan was that the common areas would be left in their natural state for the aesthetic and recreational enjoyment of the residents.  The ZBA concluded that permitting the telecommunications tower on this common area would violate the spirit and intent of the common land and would adversely impact both the Coburn Woods homeowners and the abutters in the adjacent Chapel Hill neighborhood.  Second, the ZBA concluded that the

-8-

tower would be out of character with the "overwhelmingly residential area" because, while the tower would be difficult to see from a public way, it would be visible to the direct abutters and nearby property owners.  Finally, the ZBA stated that it was persuaded that property values would be negatively impacted by the tower.  The ZBA recognized that Omnipoint had presented expert testimony refuting this conclusion, but the ZBA found that none of Omnipoint's property value assessments adequately captured the effect of the proposed tower on surrounding property values.

Omnipoint filed a motion for a rehearing with the ZBA on January 10, 2007, arguing that the ZBA's decision was based on mistaken facts.  CR 38, 39.  Omnipoint argued that the land noted as "common property" in the original Coburn Woods Association documents was subject to the authority of the Association's board of directors, which has the power to purchase, sell, lease, or otherwise use the common property.  Omnipoint also argued that cable boxes and other utilities had been placed on the common land since 1972 despite the fact that these utilities were not part of the original plan.  Omnipoint disputed the characterization of the facility as a commercial venture, arguing

that the facility is like any other utility infrastructure.
Finally, Omnipoint argued that "the ZBA improperly focused on
concerns relating to wireless telecommunications in general and
their impact and appropriateness in various settings rather than
the specific characteristics and design of the WCF [wireless
communications facility] at issue in this instance."

The ZBA considered Omnipoint's motion at its January 23,
2007 meeting and unanimously denied the request for rehearing,
stating that Omnipoint's motion did not contain new information
and that the ZBA's original decision was the product of due
diligence and good faith discussions.

**E.    Federal Telecommunications Law**

The Telecommunications Act ("TCA") of 1996 attempts to
balance the need for telecommunications technology with the need
to preserve state and local control over zoning.  See 47 U.S.C. §
332(c)(7); ATC Realty, LLC v. Town of Kingston, 303 F.3d 91 (1st
Cir. 2002); Sw. Bell Mobile Sys. v. Todd, 244 F.3d 51, 57 (1st
Cir. 2001).  The TCA requires that any decision by a local zoning
authority denying a request to place a personal wireless service
facility must be:  1) in writing and 2) supported by substantial

evidence contained in a written record.  47 U.S.C. §332(c)(7)
(B)(iii).

Although the decision must be in writing, the local board is
not required to make formal findings of fact or conclusions of
law.  See, e.g., Todd, 244 F.3d at 59; see also Second Generation
Props., L.P. v. Town of Pelham, 313 F.3d 620, 629 (1st Cir.
2002); Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297
F.3d 14, 20 (1st Cir. 2002).  The written denial must, however,
"contain a sufficient explanation of the reasons for the permit
denial to allow a reviewing court to evaluate the evidence in the
record supporting those reasons."  Todd, 244 F.3d at 60.

Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Nat'l Tower, 297 F.3d at 22 (quoting Penobscot Air
Servs. v. Fed. Aviation Admin., 164 F.3d 713, 718 (1st Cir.
1999)).  The substantial evidence test requires "more than a
scintilla" of evidence.  ATC Realty, 303 F.3d at 94.  When
reviewing whether a local board's decision is supported by
substantial evidence, the reviewing court will ordinarily
consider only the administrative record.  Second Generation
Props., 313 F.3d at 628; Nat'l Tower, 297 F.3d at 22.

-11-

The substantial evidence test is deferential to the local board, and "the courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it."  Nat'l Tower, 297 F.3d at 23; see also Second Generation Props., 313 F.3d at 627.

Finally, the TCA states that no local board may regulate the placement of a personal wireless service facility on the basis of the environmental effects of radio frequency emissions, provided that the facility complies with emissions regulations.  47 U.S.C. § 332(c)(7)(B)(iv).

**F.   State Law Review**

A person aggrieved by the decision of a local ZBA may appeal the decision in court, and the decision will be set aside only if the party demonstrates that the ZBA's decision was illegal or unreasonable.  N.H. Rev. Stat. Ann. § 677:6; Feins v. Town of Wilmot, 154 N.H. 715, 717 (2007).  The New Hampshire Supreme Court has explained that this standard focuses the inquiry on whether there is evidence upon which the ZBA's findings could have been reasonably based.  See Lone Pine Hunters' Club, Inc. v. Town of Hollis, 149 N.H. 668, 670 (2003); Hussey v. Town of Barrington, 135 N.H. 227, 231 (1992).

-12-

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 94 (1st Cir. 1996); <u>see</u> <u>Celotex</u>, 477 U.S. at 323.

## III.  <u>ANALYSIS</u>

### A.  <u>Telecommunications Act</u>

The ZBA's main reason for concluding that Omnipoint's proposed wireless facility would impair the integrity of the surrounding neighborhood was that the tower would be visible to

-13-

residential abutters in a cluster-style development where the natural wooded areas are essential to the character of the community.

The First Circuit has held that visual impact and aesthetics are valid considerations, provided that the aesthetic judgment is "grounded in the specifics of the case" and is not a pretext for a prohibition of wireless services.  See Todd, 244 F.3d at 61. Generalized negative comments submitted by residents that could be applicable to any wireless tower are not an appropriate basis for rejection based on aesthetic grounds.  See ATC Realty, 303 F.3d at 97; Todd, 244 F.3d at 61.  Comments regarding aesthetic and visual impact that focus on the tower in the context of its proposed location, however, are appropriate for the ZBA to consider.

There is substantial evidence in the record to support the ZBA's conclusion that the visual and aesthetic impact of this proposed tower would be out of character with the surrounding neighborhood.  Residents provided extensive testimony at two ZBA public meetings regarding the proposed location of the tower and its context within the community.  See CR 21, 32.  For example, resident David Toub, whose property abuts the area targeted by

-14-

Omnipoint in its proposal, testified that he sited his house on the back of his property and added a screened-in porch and a deck to his home because of assurances he received that the common area near his home would remain in its natural undeveloped state. CR 21 at 22. Other residents also testified that they would be able to see the base of the tower from the windows facing their backyard. See CR 21 at 30 (testimony of Gay Rosenfeld), 33 (testimony of Joseph Guiliano), 34 (testimony of Ann Phillips); CR 32 at 19 (testimony of Sue Pothier), 32 (testimony of Joseph Zidek). Many residents testified that they considered the wooded area to be an important part of the Coburn Woods community and that the visual impact of the proposed tower would be out of character with the development. See, e.g., CR 21 at 25 (testimony of David Kosofsky), 33 (testimony of Steve Hattamer), 35 (testimony of Monica Dove).

In addition, residents testified that the wooded common area is used for recreation and contains walkways used by pedestrian schoolchildren to walk to nearby Birch Hill Elementary School. See, e.g., CR 21 at 22 (testimony of Tim Bawmann), 27 (testimony of Kelly Bawmann), 36 (testimony of Ann Phillips). For example, resident Steve Hattamer testified that there is significant

-15-

pedestrian traffic in the wooded common area including hikers and children; Mr. Hattamer also testified that nearby elementary school teachers have led school field trips into the woods to look at the animals.  <u>See</u> CR 21 at 32.  Sue Pothier testified that her daughter and friends have used the wooded area for recreation and play.  <u>See</u> CR 32 at 17.

To rebut these comments, Omnipoint presented evidence that the land is currently being used as a holding place for construction equipment, not as a place of recreation.  <u>See</u> CR 32 at 5, 12.  Omnipoint noted that the ultimate location of the tower would not interfere with any pedestrian paths, and it emphasized that the tower would be minimally visible, landscaped at its based to camouflage the fenced-in area and rising only 26 feet above the tree canopy. CR 32 at 5.

Under substantial evidence review, "the courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it." <u>Nat'l Tower</u>, 297 F.3d at 23.  While there are multiple inferences that could be drawn from the record in this case, it was reasonable for the ZBA to infer from the testimony provided by residents, together with material submitted by attorneys for the

residents, that the proposed tower would be visually,
aesthetically, and functionally out of character with the
surrounding neighborhood.  See Todd, 244 F.3d at 62 (noting that
the fact that two inconsistent conclusions could reasonably be
drawn from the evidence does not preclude a finding that the
decision was supported by substantial evidence).[2]

**B.   State Law Analysis**

Omnipoint has also failed to meet its burden of
demonstrating that the ZBA's decision was illegal or
unreasonable.  See N.H. Rev. Stat. Ann. § 677:6.  Omnipoint makes
no suggestion that the ZBA acted illegally, it argues only that
the ZBA acted unreasonably.  The ZBA is authorized under New
Hampshire state law to make decisions on special exceptions in
accordance with the City of Nashua's Land Use Code.  See N.H.
Rev. Stat. Ann. § 674:33 IV.  I have already explained that the
ZBA's decision was supported by substantial evidence.  For the
same reasons, its decision was reasonable and in compliance with

---

[2] Because I find that there is substantial evidence in the
record to support the ZBA's conclusion that Omnipoint's proposed
tower would be out of character with the surrounding neighborhood
visually, aesthetically, and functionally, I need not address the
ZBA's other rationales for its decision.

New Hampshire law.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, defendant's motion for partial summary judgment (Doc. No. 10) is granted, and plaintiff's partial motion for summary judgment (Doc. No. 12) is denied.

SO ORDERED.


<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

February 6, 2008

cc:  Jennifer Parent, Esq.
     Kristin M. Yasenka, Esq.
     David R. Connell, Esq.
     James M. McNamara, Esq.